**Larry C. WILLIAMS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 46S00–9206–CR–503.

Supreme Court of Indiana.

Aug. 24, 1993.

Donald W. Pagos, Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos, Michigan City, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Defendant–Appellant Larry C. Williams presents this direct appeal following the trial court's imposition of a 60–year sentence for a murder conviction to run consecutively with the sentences imposed for other related felony convictions. The following issues are presented:

1. Following remand, which judge should preside: the original trial judge or the special judge appointed for the post-conviction proceedings?

2. Did the trial court err by denying the defendant's motions for funds to employ expert witnesses?

3. Did the trial court improperly impose a 60–year consecutive sentence?

4. Was the defendant entitled to a new guilt phase trial because the original jury could not be re-empaneled for the penalty phase following remand?

In the first of his two trials for this offense, the defendant was convicted of murder, felony murder, conspiracy to commit armed robbery, and armed robbery. He was also found to be a habitual offender. Following the jury's recommendation that the death penalty be imposed on the murder charge, the defendant was sentenced to death by the regular judge of the LaPorte Circuit Court, Robert S. Gettinger, who also imposed consecutive sentences of 30 years for conspiracy and 30 years for armed robbery. The convictions and the death sentence were affirmed on direct appeal. *Williams v. State* (1982), Ind., 430 N.E.2d 759. The defendant's subsequent petition for post-conviction relief was heard and denied by Special Judge Donald D. Martin. On appeal from this denial, the death sentence and habitual offender deter-

minations were vacated, the judgment of the trial court imposing the consecutive sentences was affirmed, and the case was remanded for a new death penalty hearing and imposition of a new sentence. *Williams v. State* (1988), Ind., 525 N.E.2d 1238. Judge Gettinger presided in the trial court proceedings following remand. After denial of the defendant's motions for change of judge and change of venue, the new death penalty hearing commenced but resulted in a mistrial.[1] Several months later, the State withdrew its request for the death penalty, and the trial court thereafter set and conducted a sentencing hearing. As a result, the defendant was sentenced to 60 years for murder, to run consecutively to the previously affirmed consecutive terms of 30 years each for armed robbery and conspiracy.

### 1. Jurisdiction of Regular Judge

The defendant first argues that Judge Martin, the special judge who presided in the post-conviction proceedings, should have retained jurisdiction following remand, and that Judge Gettinger, the regular judge of the court, lacked jurisdiction to conduct the resentencing hearing and to enter the sentencing order. The defendant's contention is based on Ind. Trial Rule 79(15):

> Except as permitted by Trial Rule 76(1), unless the special judge is unavailable by reason of death, sickness, absence or unwillingness to act, the jurisdiction of a special judge shall continue in all proceedings filed under a given cause number, including without limitation, proceedings to enforce the judgment or to modify or revoke orders pertaining to custody, visitation, support, maintenance and property dispositions and for post-conviction relief.

The State counters that a special judge selected for a post-conviction proceeding has jurisdiction only over the post-conviction portion of a cause, citing *State ex rel.*

---

1. At this hearing the jury was selected and sworn, opening statements were made, and initial evidence was received. On the fourth day of trial the court granted the defendant's motion for mistrial on grounds of juror misconduct, in which motion the State concurred.

*Sufana v. Superior Court of Lake County* (1978), 269 Ind. 466, 381 N.E.2d 475, and *Weatherford v. State* (1987), Ind., 512 N.E.2d 862. The defendant argues that, unlike *Sufana* and *Weatherford,* because the resentencing from which he now appeals was a result of post-conviction proceedings presided over by the special judge, the special judge retained jurisdiction over the resentencing hearing itself.

■ We reject the defendant's contention. Our T.R. 79(15) is intended to provide for the continuing jurisdiction of a special judge in the event of *subsequent* post-conviction relief proceedings but not to prolong the jurisdiction of a special judge appointed for a post-conviction proceeding. The authority of such a special judge terminates with the conclusion of the post-conviction proceedings. The original trial court judge correctly reassumed jurisdiction following remand.

### 2. Funds to Employ Expert Witnesses

■ The defendant next contends that the trial court erred by denying his motions seeking funds as an indigent to employ a psychiatrist or social worker to assist him in determining and presenting evidence of mitigation during the death penalty phase. He argues that this Court apply *Castor v. State* (1992), Ind., 587 N.E.2d 1281, to find an abuse of discretion in denying the requested funds.

In *Scott v. State* (1992), Ind., 593 N.E.2d 198, we recently reviewed Indiana's commendable history of providing indigent criminal defendants with the means to defend themselves. We recognized and discussed the two central considerations involved: "whether the services are necessary to assure an adequate defense, and whether the defendant specifies precisely how he would benefit from the requested expert services." *Id.* at 200 (citations omitted).

The defendant's first motion sought funds to employ a specified psychiatrist to "evaluate" the defendant and "present testimony in the penalty phase, if required." Record at 149. It further sought to hire a social worker to "conduct an extensive social history investigation concerning the defendant" in order to mitigate the time otherwise required of the psychiatrist. *Id.* Following the denial of this motion, the defendant filed a modified motion requesting funds "to employ a psychosocial worker only" to compile a psychosocial history. The motion argued that "[c]ounsel disagrees with the proposition that he is not entitled to employ experts to go on a fishing expedition," urged that the psychosocial history "would at least enable counsel to ascertain whether some indication of mitigation exists," and asserted that without the help of the psychosocial worker "counsel has no way of even exploring the potential existence of mitigating factors." Record at 156–57. Neither motion was supported by the identification of any specific mitigating factors for which evidence was being sought and was not otherwise available.

■ We find no abuse of discretion in denying the motions. The appointing of an expert is not necessary when the purpose of the expert appears to be exploratory only. *Scott,* 593 N.E.2d at 200; *Hough v. State* (1990), Ind., 560 N.E.2d 511, 516. The statutory mitigating circumstances in most cases are matters generally within the common experience of average persons and capable of fair ascertainment and presentation in evidence by attorneys. Absent an adequate showing demonstrating a substantial probability of a specific mitigating circumstance, the providing of psychiatrists or social workers will not be required. Such a showing was not made in this case.

### 3. Imposition of 60–year Consecutive Sentence

The defendant argues that the trial court improperly enhanced his murder sentence by relying on aggravating factors that were material elements of the charged offenses. He also claims that a murder conviction occurring after the murder charged herein was improperly used as an aggravating circumstance.

In its sentencing order stating the reasons for enhancement of the presumptive

sentence for murder, the trial court noted the defendant's conviction of another murder in Fulton Circuit Court on May 9, 1980, and found that any lesser sentence would depreciate the seriousness of the crime, specifically discussing multiple aspects of the defendant's conduct in the course of the murder. Record at 207. Among the aggravating circumstances authorized by statute to support the imposition of enhanced and consecutive sentences are "[t]he person has a history of criminal or delinquent activity" and "[i]mposition of a reduced sentence ... would depreciate the seriousness of the crime." Ind.Code § 35–38–1–7.1(b)(2), (4).

We first observe that the defendant inaccurately sets forth the date of his Fulton County murder conviction. He contends that it "did not exist until May 9, 1990, which is after the instant offenses were committed." Brief of Appellant at 14. The Fulton County murder conviction was identified in the present sentencing order as occurring May 9, 1980. Record at 208. In 1981 we decided a direct appeal of that same conviction. *Williams v. State* (1981), Ind., 426 N.E.2d 662. As to this matter, the defendant's claim is invalid.

■ The defendant is correct that a fact which comprises a material element of a crime may not also constitute an aggravating circumstance to support an enhanced sentence, but the particularized individual circumstances may be considered as a separate aggravating factor. *Townsend v. State* (1986), Ind., 498 N.E.2d 1198, 1201; *Rust v. State* (1985), Ind., 477 N.E.2d 262, 265.

■ In urging that the enhanced sentence improperly rests upon material elements of the charged offenses, the defendant identifies four of the aspects noted in the trial court's discussion of aggravating circumstances and argues that these four factors constitute elements of the offense of conspiracy to commit armed robbery for which the defendant was convicted.[2] In addition to these four aspects of the offense, however, the trial court also identified several other particulars of the defendant's conduct in the course of the murder: stabbing the victim several times with a kitchen knife, attempting to slit the victim's throat, using a pipe repeatedly to strike the defendant to the floor upon his attempts to arise, striking the fallen victim with a whiskey bottle, and encouraging his accomplice to shoot the victim.

The articulation of specifics in the trial court's sentencing statement merely provides a description of its reasons for finding that any lesser sentence would depreciate the seriousness of the crime. These individual specific aspects of conduct do not each constitute an independent aggravating circumstance upon which the enhanced sentence is based. Even assuming *arguendo* that the four noted aspects of conduct cited by the defendant consist solely of the material elements of the other offenses, we decline to invalidate the court's resulting finding of seriousness of the crime. The trial court's determination remains well-supported by its consideration of other noted particulars of the defendant's conduct in the course of the offense.

There is no error in the imposition of an enhanced sentence.

> The co-defendant, Larry Perkins, dropped the defendant off at the decedent's residence and while the defendant was inside the house he smoked marijuana while the decedent was laying on the couch.
> There came a time he, the co-defendant, Larry Perkins, was admitted into the decedent's residence by the defendant, Larry Williams, and eventually they planned to, and did knock the decedent out while he was laying on the couch.
> Record at 207–08.

---

2. The defendant names the following four factors as cited by the trial court in support of aggravation but also constituting elements of the offense of conspiracy to commit armed robbery:
   That the defendant, Larry C. Williams, and his co-defendant, Larry Perkins, drove to the decedent's residence with a calculated plan to get some money from the decedent.
   And that the co-defendant, Larry Perkins, had in his possession a .22 caliber Revolver prior to entering the decedent's residence, but during the course of killing the defendant gained possession of that weapon.

### 4. *Entitlement to Original Penalty Phase Jury*

▮ The defendant contends that he is entitled to a new guilt phase trial because his original guilt phase jury could not be re-empaneled for the death penalty hearing after remand.

His argument is not persuasive because it does not explain how such claimed error could affect the validity of the original jury determination of guilt. In addition, the alleged issue is moot because the penalty phase hearing after remand resulted in a mistrial followed by the State's withdrawal of the request for the death penalty. The claimed error had no effect upon the resentencing from which he now appeals.

Judgment affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and KRAHULIK, JJ., concur.