Corey **HENDERSON**, Defendant–Appellant,

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 49S00–0010–CR–616.

Supreme Court of Indiana.

June 6, 2002.

Kathleen M. Sweeney, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice.

The defendant, Corey Henderson, was involved in an April 1999, Indianapolis drug related armed robbery, and in the ensuing struggle, Jamar Reynolds, an accomplice, was fatally wounded. The defendant was convicted on three counts: 1. felony murder;[1] 2. conspiracy to commit robbery as a class A felony;[2] and 3. rob-

---

1. Ind.Code § 35–42–1–1.

2. Ind.Code § 35–41–5–2; Ind.Code § 35–42–5–1.

bery as a class A felony.[3] The trial court merged the defendant's conviction for class A felony robbery count into the felony murder count,[4] and sentenced the defendant to sixty-five years for felony murder and a concurrent fifty years for class A felony conspiracy to commit robbery.[5] In his direct appeal the defendant contends that the trial court erred in denying his motion to suppress, that his convictions for murder and conspiracy to commit robbery violate the Indiana Double Jeopardy Clause, that the trial court abused its discretion in sentencing, and that his sentence is manifestly unreasonable.

### 1. Motion to Suppress

■ The defendant first contends that the trial court committed reversible error when it denied his motion to suppress his statement to police because it was obtained from a coerced search and a warrantless arrest. The defendant was arrested in his home and later, after being given the standard warnings, gave a statement to police at the jail. When the arrest was made, the police did not possess an arrest warrant or a warrant to search the home. The defendant claims that the warrantless entry into his home and his subsequent warrantless arrest violate the Fourth Amendment to the United States Constitution as an unreasonable search.[6]

■ The Fourth Amendment protects against warrantless and nonconsensual entry into a residence by police to search for a felony arrestee even when officers have probable cause to make the arrest. *Payton v. New York*, 445 U.S. 573, 576, 100 S.Ct. 1371, 1374–75, 63 L.Ed.2d 639, 644 (1980). The State concedes that the police officers' arrest of the defendant amounted to a *Payton* violation. It asserts, however, that the defendant's subsequent statement to police is not thereby excluded from evidence.

■ Citing *New York v. Harris*, 495 U.S. 14, 21, 110 S.Ct. 1640, 1644–45, 109 L.Ed.2d 13, 22 (1990), and *Cox v. State*, 696 N.E.2d 853, 859 (Ind.1998), the State argues the exclusionary rule does not prohibit the use of a stationhouse statement made by a defendant in legal custody, even if the statement is taken after a *Payton* violation. The State is correct in this regard. "[W]here the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in

---

3. Ind.Code § 35–42–5–1.

4. We note inconsistencies among the trial court's declarations at the sentencing hearing, the Chronological Case Summary (CCS), and its Abstract of Judgment. The CCS notes, "Count 3 [robbery] merges into Count 2 [conspiracy]." Record at 22. The abstract of Judgment similarly indicates, "Count 3 [robbery] merges into Count 2 [conspiracy]." *Id.* at 26. However, at the sentencing hearing, the trial court announced its decision to "impose sentence on count 1 [murder] of sixty-five years. Count 2 [conspiracy], fifty years. Count 3 [robbery] merges into count 1. There will be no sentence on that offense. Count[s] 1 and 2 will be served concurrent to one another." Record at 678. Attributing the notations on the CCS and Abstract of Judg-

ment to scrivener error, we deem the sentence to be as announced by the judge in open court.

5. The defendant also received a three-year sentence for criminal contempt. Record at 78.

6. The defendant also cites Article 1, Section 11 of the Indiana Constitution, but because the defendant presents no authority or independent analysis supporting a separate standard under the state constitution, any state constitutional claim is waived. *Williams v. State*, 724 N.E.2d 1093, 1097 n. 5 (Ind.2000); *Brown v. State*, 703 N.E.2d 1010, 1015 n. 4 (Ind.1998); *Fair v. State*, 627 N.E.2d 427, 430 n. 1 (Ind.1993).

violation of *Payton.*" *Cox,* 696 N.E.2d at 859 (quoting *Harris,* 495 U.S. at 21, 110 S.Ct. at 1644–45, 109 L.Ed.2d at 22). For exclusion purposes, the relevant inquiry is whether the defendant gave the statement while in *lawful* custody. *See Harris,* 495 U.S. at 17–21, 110 S.Ct. at 1642–45, 109 L.Ed.2d at 19–22. "It is well settled that a police officer may arrest a suspect without a warrant if the officer has probable cause to believe that the suspect has committed a felony." *Ortiz v. State,* 716 N.E.2d 345, 348 (Ind.1999), *Peterson v. State,* 674 N.E.2d 528, 536 (Ind.1996); *Sears v. State,* 668 N.E.2d 662, 666–67 (Ind.1996). "Probable cause exists when, at the time of the arrest, the arresting officer has knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that the suspect had committed a criminal act." *Ortiz,* 716 N.E.2d at 348 (citing *Peterson,* 674 N.E.2d at 536).

■ During the police investigation of the death of Reynolds, three witnesses to the shooting described the perpetrator as five feet, four inches tall, weighing 140–150 pounds, with puffy permed hair, and solid gold teeth across the front top of his mouth. The decedent's best friend stated that this description matched a person named Corey, with whom Reynolds and Guilford Forney, a co-perpetrator,[7] had been associating for the past few months. Forney's brother contacted the police and stated he had heard that Corey was in the car at the time of the homicide and confirmed the description given by the witnesses. From this evidence the police had probable cause to believe that the defendant took part in the crimes committed.

Forney's brother stated that Corey lived in a house around the corner on Sunshine Avenue with a family that had a son named Kalief Martin. He described the house where Corey was staying as well as the house across the street from it. After determining the address of the former house, the detective verified that Patty and Otis Martin lived there with their son Kalief. Marion County Sheriff Mike Turner located Patty Martin, who confirmed that Corey Henderson lived in her home. Det. Turner asked Martin to take him to her house. She complied, and when she opened the door, three police officers entered and arrested Henderson.

We hold that regardless of the warrantless police entry into the Martin home where the defendant Corey Henderson was living, the police nevertheless had probable cause to arrest the defendant, and his subsequent statement in police custody was not rendered inadmissible by the warrantless entry.

## 2. Indiana Double Jeopardy

The defendant contends that his convictions and sentences for felony murder and conspiracy to commit robbery as a class A felony violate the Indiana Double Jeopardy Clause, Article 1, Section 14 of the Indiana Constitution. He seeks reduction of his conspiracy conviction from a class A to a class B felony.

■ He expressly grounds his double jeopardy claim on the actual evidence test announced in *Richardson v. State,* 717 N.E.2d 32 (Ind.1999). Under this test, to establish double jeopardy, the defendant must demonstrate "a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53. The defendant argues that the same injury, the fatal gunshot wound to Reynolds, was used

---

7. Forney was convicted of felony murder, conspiracy to commit robbery, and robbery. The convictions were upheld on appeal. *Forney v. State,* 742 N.E.2d 934 (Ind.2001).

"to both prove an essential element of the murder and an essential element of the conspiracy to commit robbery." Brief of Appellant at 15.

■ This argument does not prevail. Under the actual evidence test, "it is not sufficient merely to show that the same evidence may have been used to prove a *single element* of two criminal offenses." *Redman v. State*, 743 N.E.2d 263, 267 (Ind.2001) (emphasis in original). To establish double jeopardy, "it is necessary to show a [reasonable [8]] possibility that the same evidentiary facts were used to prove the *body of essential elements* that comprised each of two or more of the offenses resulting in convictions." *Id.* (emphasis in original). This Court recently emphasized:

> The test is *not* merely whether the evidentiary facts used to establish *one* of the essential elements of one offense may also have been used to establish *one* of the essential elements of a second challenged offense. In other words, under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense.

*Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).

■ In the present case the jury was separately instructed as to the essential elements of each of the challenged criminal offenses. One instruction advised that to convict for felony murder under Count 1, the State must prove: "(1) the defendant; (2) killed; (3) another person; and (4) while committing or attempting to commit robbery, which is to knowingly take prop-erty from another person or from the presence of another person by using or threatening the use of force on another person, or by putting another person in fear." Record at 128. As to conspiracy to commit robbery, the elements instruction required the State to prove: "(1) the defendant (2) agreed with another person (3) to commit the crime of robbery, which is to knowingly or intentionally take property from the person or presence of another person by using or threatening the use of force, or by putting any person in fear and (4) one of the conspirators performed an overt act in furtherance of the agreement." Record at 129–30. This instruction also advised that "[i]f the State further proves an additional element beyond a reasonable doubt that the crime resulted in serious bodily injury to any person other than a defendant, you should find the defendant guilty of the crime of conspiracy to commit robbery, a class A felony." Record at 130. The instruction also explained that it would be a class B felony if the State proved that it was committed by the defendant while armed with a deadly weapon. *Id.*

In addition to instructing on the elements, the trial court also read to the jury the charging information as to all three counts. As to the murder count, the information charged that Henderson killed Reynolds while committing or attempting to commit robbery (taking U.S. currency from Michael Cornner by putting Cornner in fear or by using or threatening to use force). As to the conspiracy count, the information specified the intended robbery to be the taking of United States currency from Michael Cornner, it named the resulting serious bodily injury as "a gunshot wound" to Reynolds's back, and for the

---

**8.** *See Griffin v. State,* 717 N.E.2d 73, 89 (Ind. 1999)("[T]he possibility must be reasonable, not speculative or remote.")

overt act alleged that Henderson "took possession of said handgun and placed it against the side of Michael Cornner." Record at 125. In the present case, the evidentiary facts that established the essential elements of felony murder did not also establish the "agreement" element of conspiracy. Similarly analyzing the evidentiary facts that may have been used to establish the essential elements of class A felony conspiracy, such facts did not also establish that the defendant committed or attempted to commit robbery, one of the elements of the charged felony murder. It is less clear whether the evidentiary facts used to establish all the essential elements of conspiracy to commit robbery may also have been used to establish all the elements of felony murder. The evidentiary fact that established the resulting serious bodily injury as described in the court's elements instruction (which was broader than the charging information) was likely the death of Reynolds, which would also have proven the resulting death element of felony murder. Furthermore, it may initially appear that the evidentiary facts proving the charged overt act (Henderson placed a handgun in the Cornner's side) *could* have used to establish *attempted* robbery, one possible basis for felony murder under the court's instruction as to the elements of felony murder. It is significant, however, that the jury found the defendant guilty as to Count 3, robbery (which the trial court merged with Count 1, felony murder), demonstrating that the jury found the robbery to have been completed, rather than just attempted. The evidentiary facts proving class A felony conspiracy to commit robbery did not also establish the *completed* robbery used by the jury to establish felony murder. We conclude that it is not reasonably possible that the jury used the same evidentiary facts to establish all the elements of both class A felony conspiracy to commit rob-

bery and felony murder (the defendant killed Reynolds while committing the robbery of Cornner). In other words, the offenses of felony-murder and class A felony conspiracy were each established by the proof of a fact not used to establish the other offense. We find no violation of the Double Jeopardy Clause of the Indiana Constitution.

We note, however, that this appeal was initiated and the Brief of Appellant was filed before this Court issued its clarifying opinions in *Redman* and *Spivey*. Furthermore, *Spivey* expressly acknowledges that, apart from a state constitutional claim of double jeopardy under *Richardson*, similar relief may be obtained under a series of rules of statutory construction and common law. *Spivey*, 761 N.E.2d at 834. In *Pierce v. State*, 761 N.E.2d 826 (Ind.2002), issued contemporaneously with *Spivey*, we applied one of these rules and granted relief.

We therefore elect, *sua sponte*, to review the defendant's claims under these rules of common law and statutory construction. Among these is the doctrine that where one conviction is based on the same bodily injury that forms the basis for elevating another conviction to a higher penalty classification, the two cannot stand. *See Pierce*, 761 N.E.2d at 830 (same injury used to establish class A felony burglary and class B felony robbery); *Moore v. State*, 652 N.E.2d 53, 60 (Ind. 1995)(same injury used to establish class A felony robbery and murder).

The defendant's claim qualifies for consideration under this doctrine. The death of Reynolds was the basis for his convictions of both murder and class A felony conspiracy. The defendant argues that it would be proper to reduce his conspiracy conviction from a class A felony to a class B felony. Class B felony conspira-

cy to commit robbery requires the offense to be committed while armed with a deadly weapon. Ind.Code § 35–41–5–2; Ind.Code § 35–42–5–1. The defendant's conspiracy conviction was based on the use of a handgun. In this way, his murder conviction would not be based on the same bodily injury that forms a basis for elevating his conspiracy conviction. We agree that his conspiracy conviction should be reduced to a class B felony.

### 3. Sentencing

■ The defendant contends that in imposing enhanced sentences of sixty-five years for murder and fifty years for class A felony conspiracy, the trial court abused its discretion by ignoring certain mitigators and by relying on improper aggravators. In general, sentencing determinations are within the trial court's discretion and are governed by Indiana Code § 35–38–1–7.1. *See Thacker v. State,* 709 N.E.2d 3, 9 (Ind.1999); *Harris v. State,* 659 N.E.2d 522, 527 (Ind.1995). We review trial court sentencing decisions only for abuse of discretion, including a trial court's decisions to increase or decrease the presumptive sentence because of aggravating or mitigating circumstances and to run the sentences concurrently or consecutively. *See Archer v. State,* 689 N.E.2d 678, 683 (Ind.1997); *Smith v. State,* 675 N.E.2d 693, 697 (Ind.1996); *Morgan v. State,* 675 N.E.2d 1067, 1072 (Ind.1996); *Mott v. State,* 273 Ind. 216, 220, 402 N.E.2d 986, 988 (1980). If a trial court relies upon aggravating or mitigating circumstances to enhance or reduce the presumptive sentence, it must (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances. *Harris,* 659 N.E.2d at 527–28.

■ The defendant argued four mitigating circumstances at trial: (1) his young age, (2) lack of prior criminal history, (3) the crime was the result of circumstances unlikely to recur, and (4) the victim of the crime induced or facilitated the offense. Record at 672–73. The trial court only afforded weight to the first two. The defendant contends the trial court abused its discretion in not addressing the other two proposed mitigating circumstances.

■ Although a sentencing court must consider all evidence of mitigating circumstances offered by the defendant, the finding of a mitigating factor rests within the court's discretion. *Harris v. State,* 659 N.E.2d 522, 528 (Ind.1995)(citing *Aguirre v. State,* 552 N.E.2d 473, 476 (Ind.1990)). "A court does not err in failing to find mitigation when a mitigation claim is 'highly disputable in nature, weight, or significance.'" *Smith v. State,* 670 N.E.2d 7, 8 (Ind.1996)(quoting *Wilkins v. State,* 500 N.E.2d 747, 749 (Ind.1986)). While a failure to find mitigating circumstances clearly supported by the record may imply that the sentencing court improperly overlooked them, the court is obligated neither to credit mitigating circumstances in the same manner as would the defendant, nor to explain why he or she has chosen not to find mitigating circumstances. *Crawley v. State,* 677 N.E.2d 520, 523 (Ind.1997)(citing *Johnson v. State,* 580 N.E.2d 959, 961 (Ind.1991); *Hammons v. State,* 493 N.E.2d 1250, 1254–55 (Ind.1986)). We discern no error in the failure to recognize the existence of these two proposed mitigating circumstances.

■ The defendant also contends that the trial court improperly considered the facts comprising the essential elements of the crimes as the only aggravating circumstance warranting imposition of a sentence

in excess of the presumptive sentence. At sentencing, after the trial court discussed the mitigating factors, it provided its only description of aggravating circumstances:

So, I think those are all good things. Unfortunately, the negative, the aggravating circumstances do exist. This was a well-planned thought-out plot to rob a drug dealer. Three or more of you engaged in a conspiracy, obviously, a conspiracy to rob this person. You lured him into the car. There was language used. Signal, from the evidence I heard, for you to grab the gun which was done. As luck would have it, or unluck would have it, the person who was killed was apparently one of the participants. The target of the robbery escaped. I see too many of these cases where young men sit here having planned one bad thing and have the whole thing spiral out of control. I suppose it's the nature of drug deals, this kind of illegal behavior. I suppose that's why people take guns to these drug deals and why they take guns to robberies because they know it's a dangerous thing.

Record at 677.

The "nature and circumstances" of a crime is a proper aggravator. *See* Ind.Code § 35–38–1–7.1 (the nature and circumstances of a crime shall be considered in determining what sentence to impose); *Thacker,* 709 N.E.2d at 10. While a trial court may not use a factor constituting a material element of an offense as an aggravating circumstance, *Angleton v. State,* 714 N.E.2d 156, 160 (Ind. 1999); *Johnson v. State,* 687 N.E.2d 345, 347 (Ind.1997); *Holmes,* 642 N.E.2d at 972, a court may look to the particularized circumstances of the criminal act, *Ellis v. State,* 707 N.E.2d 797, 804–05 (Ind.1999); *Smith,* 675 N.E.2d at 698; *Ector v. State,* 639 N.E.2d 1014, 1015 (Ind.1994);

*Williams v. State,* 619 N.E.2d 569, 573 (Ind.1993). Although the particular manner in which a crime is committed may constitute an aggravating factor, *Jackson v. State,* 697 N.E.2d 53, 56 (Ind.1998); *Johnson,* 687 N.E.2d at 347; *Widener v. State,* 659 N.E.2d 529, 532 (Ind.1995), a trial court should specify why a defendant deserves an enhanced sentence under the particular circumstances, *Ellis,* 707 N.E.2d at 805; *Wethington v. State,* 560 N.E.2d 496, 510 (Ind.1990).

Here the trial court's description of the aggravating circumstances fails to specify any particular manner or circumstances related to the commission of the crimes beyond the material elements of the crimes for which the defendant was convicted. Further, there is nothing in the Record that demonstrates that the trial court weighed the mitigating and aggravating circumstances. For these reasons, we vacate the enhanced sentence and order the presumptive sentence imposed for the defendant's convictions for murder and class B felony conspiracy to commit robbery. Because of the resulting sentence reductions, we need not address the defendant's additional claim of manifestly unreasonable sentence.

## Conclusion

Finding no error in the trial court's ruling on the defendant's motion to suppress or in the admission of his post-arrest statement to police, we affirm the convictions. However, we find that the defendant's conviction for class A felony conspiracy to commit robbery must be reduced to a class B felony; and we find that the trial court's finding and weighing of aggravating circumstances do not support enhanced or consecutive sentences. We therefore remand for the entry of a judgment of conviction of murder and conspiracy to commit robbery as a class B felony, with concurrent statutory pre-

sumptive sentences to be imposed for each offense.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, J.J., concur.