**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 01 2013, 8:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEDRIN SWEATT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1209-CR-442 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause Nos. 49G04-0008-CF-144148, 49G04-0009-CF-157397

**March 1, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

After engaging in two separate episodes of criminal conduct, Kedrin Sweatt was convicted of two counts of attempted murder, one count of resisting law enforcement, one count of robbery, and four counts of criminal confinement. On resentencing, the trial court imposed an aggregate 105-year sentence. On appeal, Sweatt contends that the trial court abused its discretion in sentencing him and that his sentence was inappropriate. Concluding that the trial court acted within its discretion in sentencing Sweatt and that Sweatt's sentence was not inappropriate, we affirm.

**FACTS AND PROCEDURAL HISTORY**

This court's memorandum decision in Sweatt's prior direct appeal, which was handed down on October 22, 2002, instructs us as to the underlying facts leading to this subsequent direct appeal following resentencing:

> Shortly before 2 p.m. on August 19, 2000, Sweatt and another man robbed a Pawnmart, taking money and jewelry from the pawnshop at gunpoint. At approximately 2 p.m. Indianapolis Police Officer Christopher Marcum observed a car driven by a man who was not wearing his seat belt with Sweatt sitting in the front passenger seat. Officer Marcum began following the car in his marked patrol car. While Officer Marcum had received a report concerning the Pawnmart robbery, he did not have a description of the perpetrators. The car sped up after Officer Marcum began following, and the car did a rolling stop when it came to a stop sign. Officer Marcum then activated his emergency lights and initiated a traffic stop. Indianapolis Police Officer Jason Thalheimer was also patrolling the area and observed the car drive through the intersection without stopping. Officer Thalheimer pulled his patrol car behind Officer Marcum's vehicle in order to assist with the stop.
>
> As Officer Marcum was entering his location and the license plate number of the stopped car into a computer located in his patrol car, Officer Thalheimer approached the stopped vehicle and yelled to the occupants to put their hands where he could see them. At that point, Sweatt exited the car from the front passenger side door, crouched down, pointed a gun at Officer Thalheimer, and shot him. The bullet struck Officer Thalheimer in the center of his chest. However, the bullet did not enter his body because Officer

2

Thalheimer was wearing a bulletproof vest. Sweatt then stood, fired his gun at Officer Marcum as Marcum was exiting his patrol car, and began running. Officer Marcum began chasing Sweatt. Sweatt turned twice during the chase and shot at Officer Marcum. As Sweatt turned a third time toward Officer Marcum, Officer Marcum fired his weapon, hitting Sweatt in his upper right shoulder. Sweatt continued running for a short distance but then dropped his gun and fell to the ground where Officer Marcum handcuffed him.

Officer Thalheimer was taken to the hospital and was treated for blunt force trauma to his chest. Sweatt was also taken to the hospital and treated for his injury. On August 29, 2000, Sweatt signed a waiver of his rights and gave a statement to the police. During his statement, Sweatt commented, "Everybody in the world knows I shot the officer. I shot him to get him to shot [sic] me. There's no grudge. I just shot him because he was a cop." Tr. p. 293-94.

On August 21, 200[0], the State charged Sweatt under cause number 49G04-0008-CF-144148 [("Cause No. CF-144148")] with Counts I and II, Attempted Murder as Class A felonies; Counts III and IV, Resisting Law Enforcement as Class D felonies; and Count V Carrying a Handgun Without a License as a Class A misdemeanor. On a separate charging sheet, the State charged Sweatt with the enhancement of Count V, Carrying a Handgun Without a License with a Prior Felony Conviction as a Class C felony. The State later filed an information alleging that Sweatt was a habitual offender. On September 7, 2000, the State charged Sweatt under cause number 49G05-0009-CF-157397 [(Cause No. CF-157397")] with Count I, Robbery as a Class B felony; Counts II-X, Criminal Confinement as Class B felonies; and Count XI, Carrying a Handgun Without a License as a Class A misdemeanor with an enhancement to a Class C felony for having a prior felony conviction. On November 6, 2000, Sweatt's two cause numbers were consolidated. On October 1, 2001, a number of the charges on [Cause No. CF-157397] were dismissed, leaving Sweatt with only the robbery charge and four charges of criminal confinement under that cause number.

A jury trial was held on October 1-2, 2001, following which the jury found Sweatt guilty on all counts. The State then dismissed the Class C felony enhancement for the count of carrying a handgun and proceeded to the habitual offender phase of the trial. The jury adjudicated Sweatt to be a habitual offender. On January 4, 2002, the trial court sentenced Sweatt under [Cause No. CF-157397] to ten years for Count I, robbery; and ten years for each of his confinement counts. All of these counts were to be served concurrently. Under [Cause No. CF-144148], the trial court sentenced Sweatt to fifty years for Count I, attempted murder; fifty years for Count II, attempted murder, three years each for his two counts of resisting law enforcement; and eight years for Count V, carrying a handgun without a license. The trial court then enhanced

3

Count I by thirty years for the habitual offender adjudication and ordered Counts I and II to run consecutively and the other counts to run concurrently. The trial court ordered [Cause No. CF-144148] to run concurrently with [Cause No. CF-157397].

*Sweatt v. State*, 49A02-0201-CR-91 (Ind. Ct. App. October 22, 2002) (statutory citations contained in footnotes omitted).

On direct appeal, this court concluded that because Sweatt's act of shooting at police officers "establish[ed] Sweatt's convictions for attempted murder as well as his enhancements for resisting law enforcement," Sweatt's Class D felony resisting law enforcement convictions must be reduced. *Id*. This court also concluded that because both of the resisting law enforcement charges stemmed from one incident, the conviction for one of the two counts of resisting law enforcement should be vacated. *Id*. This court further concluded that because Sweatt was only found guilty of carrying a handgun without a license as a Class A misdemeanor, the trial court erred in entering judgment as a Class C felony. *Id*. Sweatt did not challenge his convictions for attempted murder, robbery, or criminal confinement on direct appeal, and as such, those convictions were undisturbed and his aggregate sentence remained at 130 years. *Id*.

On October 15, 2009, Sweatt filed a *pro se* petition for post-conviction relief ("PCR"). On April 27, 2011, Sweatt, by counsel, amended his PCR petition to raise the sole claim that he had received ineffective assistance of appellate counsel. Specifically, Sweatt alleged that his appellate counsel was ineffective for failing to argue on direct appeal that his consecutive sentences for the attempted murder convictions exceeded the statutory limit in effect at the

4

time he committed his crimes. The State conceded that Sweatt had raised a meritorious claim in his amended PCR petition.

In ruling on Sweatt's PCR petition, the post-conviction court made the following additional factual findings:

8. Some additional facts supporting Sweatt's convictions for robbery and criminal confinement, as reflected in the record, include the following: during the robbery, Sweatt ordered, "Get the f[***] down on the ground. This is a robbery" [Tr. p. 93], and he threatened, "If you don't get down, someone's going to get shot" [Tr. p. 94]; one of the employees from whom Sweatt demanded money was eight and a half months pregnant at the time, [Tr. p. 104]; Sweatt was armed with a silver handgun, [Tr. pp. 103-04, 117]; Sweatt and his partner also broke glass cases and took jewelry from them, [Tr. pp. 96-97, 106, 118]; thereafter Sweatt asked, "Where's the vault?" and after he took cash from the vault, Sweatt said to his partner, "Let's go, let's go…" [Tr. p. 97]. After an advisement and waiver of his *Miranda*[1] rights on August 31, 2000, Sweatt admitted to having committed this armed robbery of a West 16th Street pawnshop with his cousin …; Sweatt estimated that they took between four and five thousand dollars. [Tr. pp. 129-35].

9. The record reflects that the Pawnmart where the robbery and confinements occurred was located at 2802 West 16th Street on the west side of Indianapolis. [Tr. pp. 82, 142-43]. The responding police officer was dispatched to the scene of those crimes at 1:50 p.m. *See* [Tr. pp. 82, 92, 125].

10. The events pertaining to Sweatt's attempted murder convictions occurred near the intersection of East 36th Street and North Station. [Tr. pp. 145, 154]. The distance between that location and the Pawnmart was approximately six to seven miles and it would take approximately twenty minutes to travel from the Pawnmart to the attempt murder scene if driving the speed limit. [Tr. pp. 145-46]. Officer Marcum first saw the car in which Sweatt was riding, just prior to the traffic stop, at a few minutes after 2:00 p.m. [Tr. p. 151].

11. Sweatt's statement to the sentencing court included: "… I'm not remorseful for the charges I was accused and convicted of. How could I be when I was the one shot in the back by a policeman demonstrating brutality;" [Tr. pp. 378-79]; "… I feel I'm the victim," [Tr. p. 379]; and also included:

… Officer Thalheimer made the statement that I have no concern for human life as far as he's concerned. I say I have no concern for the lives of someone who doesn't have concern for my life, and …

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

> Officer Marcum held on the last split second, probably longer than he should have. It's appearing to me you'd rather see me dead. The feeling is mutual to all those who feel that way.
>
> [Tr. p. 379]. Nor did Sweatt express any apology or remorse regarding the armed robbery incident.

Appellant's App. pp. 209-10. The post-conviction court granted Sweatt's petition for relief, holding that the total of his consecutive sentences for the attempted murder convictions could not exceed eight-five years—the fifty-five year advisory sentence for the next highest level crime, *i.e.*, murder, plus a maximum thirty-year habitual offender enhancement. The post-conviction court also noted that the robbery and criminal confinements constituted a separate criminal episode from the attempted murders, and that on re-sentencing, the trial court would "have the discretion to otherwise impose an appropriate sentence." Appellant's App. p. 215.

The trial court conducted a resentencing hearing on August 8, 2012 and August 9, 2012. With respect to the attempted murder convictions obtained under Cause No. CF-144148, the trial court sentenced Sweatt to an aggregate term of eighty-five years. With respect to the convictions for robbery and criminal confinement obtained under Cause No. CF-157397, the trial court imposed an aggregate term of twenty years. The trial court ordered that the sentences for Cause No. CF-144148 and Cause No. CF-157397 be served consecutively, for a total sentence of 105 years. This appeal follows.

## DISCUSSION AND DECISION

Sweatt challenges his sentence on appeal, claiming both that the trial court abused its discretion in sentencing him and that his sentence is inappropriate.

### I. Abuse of Discretion

With respect to his claim that the trial court abused its discretion in sentencing him, we acknowledge that Sweatt's offenses occurred prior to the April 25, 2005 revisions to the sentencing statutes. "The Indiana Supreme Court has held that we apply the sentencing scheme in effect at the time of the defendant's offense." *Upton v. State*, 904 N.E.2d 700, 702 (Ind. Ct. App. 2009) (citing *Robertson v. State*, 871 N.E.2d 280, 286 (Ind. 2007); *Gutermuth v. State*, 868 N.E.2d 427, 432 n.4 (Ind. 2007)), *trans. denied.* Consequently, the pre-April 25, 2005 presumptive sentencing scheme applies to Sweatt's convictions.

Under the pre-April 25, 2005 sentencing statutes, sentencing decisions rest within the discretion of the trial court and are reviewed on appeal "only for an abuse of discretion, including a trial court's decision[] to increase or decrease the presumptive sentence because of aggravating or mitigating circumstances and to run the sentences concurrently or consecutively." *Henderson v. State*, 769 N.E.2d 172, 179 (Ind. 2002).

> If a trial court relies upon aggravating or mitigating circumstances to enhance or reduce the presumptive sentence, it must (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances.

*Id*. "An abuse of discretion occurs only if 'the decision is clearly against the logic and effect of the facts and circumstances.'" *Upton*, 904 N.E.2d at 702 (quoting *Pierce v. State*, 705 N.E.2d 173, 175 (Ind. 1998)). When reviewing the adequacy of a sentencing statement, this court examines both the written sentencing order and the trial court's oral comments at the sentencing hearing. *Powell v. State*, 751 N.E.2d 311, 315 (Ind. Ct. App. 2001).

In arguing that the trial court abused its discretion in sentencing him, Sweatt

acknowledges that the trial court specifically enumerated certain aggravating and mitigating factors but claims that the trial court failed to articulate any weighing or balancing of those factors. With respect to aggravating and mitigating factors, the trial court made the following statement:

> In resentencing, I have reviewed the files, both files. I've reviewed all of the facts. Have previously incorporated the statements in the findings of fact and the conclusions of law that are set out in the document filed on May the 17th, 2012, granting post conviction relief. So -- and incorporating all the Court's findings with that I would also say that the Court has reviewed the pre-sentence report that was prepared at the time of sentencing and finds as follows that there are some aggravators and some mitigators. One of the aggravators would be the Defendant's criminal history. Going back to 1992 as a juvenile, there's a true finding for disorderly conduct as a B misdemeanor, fleeing as an A misdemeanor; 1992, Trespass, as an A misdemeanor; carrying a handgun without a license, as an A misdemeanor, had you been an adult in those two situations. He also as a juvenile was arrested and had contacts with the juvenile or the criminal justice system on eight separate occasions. In 1993, he was waived to adult court and faced a conviction for criminal recklessness wherein he used a handgun and shot a friend of his in the eye. That friend did testify at the sentencing hearing as -- for the defense basically and I've taken that into consideration. In 1999, there was the handgun -- carrying a handgun without a license as a Class C felony conviction. That conviction is one where there were several new arrests that were alleged during violations and eventually his probation was revoked. And in the -- in the pre-sentence report, there are some specific aggravating circumstances listed. And to reiterate those, the Defendant according to the PSI and probation officer, was recommended that the Court find that prior attempts of probation supervision, incarceration, and attempts to rehabilitate the Defendant had failed to change his illegal behavior that the instance offenses for which the Defendant is today being resentenced involved the use of deadly weapons and that there were repeated violations of probation. Also, in reviewing the pre-sentence report and the files, the Defendant does have a history of allegations that he was a member of Gangster Disciples, although, in various pre-sentence reports he did deny that. There, nevertheless, was information from the Metro Gang Task Force that he had been a person who wore colors of the Gangster Disciples and was associated therewith. The Court does find that the fact that there were multiple victims involved in the robbery case … to be specific. That that act created a significant event impacting the lives of four

8

separate individuals. The Defendant's letter that was admitted as State's Exhibit Number 1 in the resentencing hearing yesterday, the Court finds to be an aggravating circumstance basically and for the same reasons that I stated yesterday. I understand that Mr. Sweatt would have me interpret this as taken out of context, however, I think the plain meaning of the statement that he made in the letter is perhaps more appropriate and that's what I find.[2] I do think that because the Defendant does have two children that the lengthy incarceration that he faces has an impact on them. I don't know what I could have done to avoid that impact. I do find that at the time of the offense, the Defendant was living with his family and had been working and supporting his family. So he certainly had in his heart the reasons to try to take care of his family. It's just that the criminal behavior certainly affected his ability to do that. I know that he was expelled from John Marshall Junior High School due to some problems there that his testing revealed an average to perhaps above average intelligence at the time. Also, the Defendant has a history of criminal substance abuse. That history began when he was fourteen years of age when he began drinking and he has over the years used marijuana, used cocaine, and was in fact using marijuana at the Department of Correction during part of his incarceration. And I don't know if he continues to do that as up to today, but I certainly hope that that's not the case. It's just not something that I have access to that information unless the Defendant were to tell me that himself. I have no negative reports from the Department of Correction as to his behavior while he has been at the Department of Correction.

**\*\*\*\***

I also note that the Defendant has some health issues from -- that resulted from his confrontation with the police and him being shot. And I don't know how those continue to affect him. However, I know that in 2002, ten years ago at the time of his sentencing, they were affecting his health. And I don't know if you have continuing problems from that. Do you believe that you do, Mr. Sweatt?

[The Defendant]:     Yes.

Yes, okay…. And was the bullet ever removed?

[The Defendant]:     No.

No. So that's still something that is in your body, a foreign body that came as a result of this confrontation.

**\*\*\*\***

Okay. I think the Defendant -- let me make myself very clear. I think the Defendant was sincere about saying that he now understands that there are programs that could be made available to him and are available to him at the Department of Corrections that could be helpful to him in managing his anger

---

[2]  In this letter, Sweatt indicates that he believes he is still a threat to society.

9

and in changing the way he views the police, changing the way he views the world, and may be available to assist him in becoming a citizen with a lot to give the world yet. You know, you just never want to give up on anyone, so. But by the same token, I do believe that the mindset of the Defendant because he's not yet availed himself to those programs, has not changed significantly since the time of the offense. So I just want to make sure that I put that on the record and make clear that I do understand that he does want to take advantage of some programs. I know he was offered treatment when he was out prior to this offense, a treatment for the substance abuse, but had not taken advantage of it. Probably much younger at that time and not perhaps as smart about what it would have done to help him had he been able to get himself through that.

Tr. pp. 39-45.

Upon reviewing the above statement by the trial court, we conclude that the trial court balanced the stated aggravating and mitigating factors as demonstrated by the record. The trial court's statement shows a great deal of detail as to why each factor was aggravating or mitigating and its flow clearly shows that the trial court considered the weight to be given to each factor and balanced these factors in sentencing Sweatt. As such, we conclude that the trial court did not abuse its discretion in sentencing Sweatt.

## II. Appropriateness

Sweatt also claims that his sentence is inappropriate in light of the nature of his offenses and his character. In arguing that his 105-year sentence is inappropriate, Sweatt acknowledges that "[r]egardless of what sentence is deemed appropriate, [Sweatt] is not going to leave the Department of Correction at any time soon," and notes that he "is not requesting immediate release or a drastic reduction of his sentence." Appellant's Br. p. 13. Rather, Sweatt "seeks only to have the opportunity after serving a lengthy sentence, say eight-five years, to live outside of prison at the end of his life." Appellant's Br. p. 13.

10

Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In considering whether a sentence is appropriate, we evaluate our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008). Upon review, we cannot agree with Sweatt's claim that his sentence is inappropriate.

With respect to the nature of Sweatt's offenses, we believe that Sweatt's offenses can accurately be described as heinous. During one episode of criminal conduct, Sweatt confined four individuals, one of whom was eight and a half months pregnant at the time, while he and his cousin carried out a robbery. While confining these individuals, Sweatt brandished a gun and threatened to shoot. Sweatt and his cousin stole approximately four to five thousand dollars in cash and jewelry. In a separate criminal episode which occurred a few minutes later, Sweatt shot one police officer in the chest at close range. Luckily, this officer was wearing a bulletproof vest and was not fatally injured. Sweatt then ran from a second police officer. While running from this officer, Sweatt turned and fired three shots at the officer. Sweatt only stopped after having been shot in the shoulder by the officer.

With respect to his character, Sweatt claims that his sentence is inappropriate because he "is a different person from the one who committed these crimes." Appellant's Br. p. 12.

11

In support, Sweatt points to the letter that he wrote in early- to mid-2012, in which he indicated that although he has changed over the years, he still had "a strong indignation of hate in [his] heart" and believed that he would be a threat to society. State's Ex. 1. We agree with the trial court that despite Sweatt's claim that he "don't want to hurt anyone 'no more,'" this letter indicates, as Sweatt himself believes, that Sweatt remains a danger to society. State's Ex. 1. In addition, the record demonstrates that Sweatt has a lengthy criminal history, that the nature of Sweatt's criminal activity was, at the time he committed the instant crimes, escalating in seriousness, that prior attempts to rehabilitate Sweatt's behavior have failed, and that Sweatt has a history of drug and alcohol abuse. Like the trial court, we recognize that Sweatt seems to have demonstrated a genuine desire to provide for his family and to take advantage of the anger management classes available to him. Sweatt, however, has not yet acted on this desire, and, at the time of sentencing, had not enrolled in any program available through the Department of Correction.

In light of the heinous nature of Sweatt's offenses, which again include confining four individuals during a robbery and firing shots at two separate police officers, coupled with Sweatt's criminal history, prior failed attempts to rehabilitate his behavior, and his belief that he remains a danger to society, we conclude that Sweatt has failed to meet his burden of persuading us that his 105-year sentence is inappropriate. See *Sanchez*, 891 N.E.2d at 176.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and NAJAM, J., concur.