## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



**FILED**

Dec 19 2017, 10:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mouhamadou M. Sow,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 19, 2017<br><br>Court of Appeals Case No.<br>32A05-1707-CR-1692<br><br>Appeal from the Hendricks<br>Superior Court<br><br>The Honorable Rhett M. Stuard,<br>Judge<br><br>Trial Court Cause No.<br>32D02-1604-F3-20 |

**Pyle, Judge.**

# Statement of the Case

Mouhamadou Sow ("Sow") appeals his convictions, entered following a guilty plea, for Level 3 felony operating a motor vehicle while intoxicated ("OVWI") causing serious bodily injury and leaving the scene[1] and two counts of Level 6 felony OVWI causing serious bodily injury.[2] On appeal, he argues that the trial court abused its discretion by failing to consider a mitigating factor and that his sentence was inappropriate. Because we find that the trial court did not abuse its discretion and that Sow's sentence was not inappropriate, we affirm the trial court's decision.

We affirm.

# Issues

1. Whether the trial court abused its discretion when it sentenced Sow.

2. Whether Sow's sentence was inappropriate.

# Facts

Around 8 a.m. on April 16, 2016, Sow was driving westbound on U.S. 40 near Plainfield when he crossed the double yellow line into oncoming traffic. Nikki Shoultz ("Shoultz") was driving eastbound in the lane that Sow entered and

---

[1] IND. CODE § 9-26-1-1.1(a)(2).

[2] I.C. § 9-30-5-4(a)(1).

was unable to avoid his car as there were cars in the lane next to her. As a result, Sow collided into Shoultz's car, head-on and going full speed.

[4] Shoultz's thirteen-year-old daughter and her daughter's thirteen-year-old friend, Brooke ("Brooke"), were in the backseat of Shoultz's car at the time of the crash. After the crash, Shoultz exited the car to check on both of the teenagers and saw that Brooke's face was covered in blood. Brooke's face had hit the side of the arm rest in the back seat, and she had lost two of her front, permanent teeth. However, both teenagers were able to walk, and Shoultz took them to the side of the road where Sow was already sitting.

[5] A witness who had seen the crash called 9-1-1. When police and ambulance personnel started to arrive, Sow got up and started "walking briskly" up a nearby hill. (Tr. Vol. 2 at 18). He then hid from police officers until he was finally intercepted by a K-9 officer and surrendered himself.

[6] Once Sow was in police custody, Corporal Zach Gadawski ("Corporal Gadawski") with the Plainfield Police Department detected an "odor of marijuana about him." (Tr. Vol. 2 at 29). Corporal Gadawski conducted a pat down search and discovered a small bag of a "green leafy substance" that later tested positive for marijuana in Sow's front pocket. (Tr. Vol. 2 at 30). Officers also discovered several Budweiser beer cans in the back of Sow's vehicle and noticed that Sow had "red and watery eyes" and "slurred speech." (Tr. Vol. 2 at 30). Corporal Gadawski took Sow for a blood draw, and the blood draw showed that Sow had marijuana in his system and a blood alcohol content of

0.148. Sow told Corproal Gadawski that he had run from the police because he supported his family and could not go to jail. In addition, at no point did Sow ask how Shoultz or the children were or express any concern for them.

[7] Shoultz and the children were taken to the hospital, where it was determined that Brooke had lost her two front teeth. An orthodontic specialist later told Brooke that she would not be able to replace her missing teeth with implants until she reached the approximate age of eighteen and stopped growing. Shoultz sustained bruising along her abdomen and chest that took three to four months to heal, as well as bruises to the bone marrow of her left leg.

[8] On April 18, 2016, the State charged Sow with Level 3 felony OVWI causing serious bodily injury and leaving the scene of the accident; Class A misdemeanor OVWI; Class B misdemeanor public intoxication and endangering another person; and three traffic infractions. On December 2, 2016, the State amended the charging information and charged Sow with the following additional counts: two counts of Level 6 felony OVWI causing serious bodily injury; two counts of Level 6 felony operating per se (drugs) causing serious bodily injury; and Class B misdemeanor possession of marijuana.

[9] On June 23, 2017, Sow pled guilty to Level 3 felony OVWI causing serious bodily injury and leaving the scene and two counts of Level 6 felony OVWI causing serious bodily injury. In exchange, the State dismissed the remaining charges and agreed that Sow would have a sentencing cap of nine (9) years for

his Level 3 felony and two and one half (2½) years each for his Level 6 felonies, with all sentences to be served concurrently.

[10] Subsequently, the trial court accepted the plea agreement and held a sentencing hearing. At the hearing, Shoultz testified that Brooke had undergone a number of procedures as a result of her injuries. According to Shoultz, Brooke now wears temporary teeth and has a speech impediment. Shoultz also testified that her daughter gets "very very upset" when she sees accidents and remembers the "trauma of that day . . . ." (Tr. Vol. 2 at 26).

[11] Next, Sow spoke at the sentencing hearing and explained that he is an immigrant from Senegal who has lived in the United States since 2013. His wife, who is an American citizen, had separated from him in 2014 as a result of his drinking problems. At the time of the sentencing hearing, according to Sow, he was "just short of being able to obtain citizenship," in terms of his time in the United States, but was no longer going to be able to obtain citizenship because of his convictions. (Tr. Vol. 2 at 46). Sow testified that it was his understanding that he was instead going to be deported.

[12] With respect to his criminal history, Sow acknowledged that he had previously been charged with disorderly conduct and public intoxication in another cause. In October 2015, he had entered into a pre-trial diversion agreement, and that agreement had been pending when he committed the current offenses.

[13] Sow's Alcoholics Anonymous ("AA") sponsor also testified at the sentencing hearing and said that Sow had been attending AA meetings twice a week since

October of 2016. During this time, the sponsor had seen Sow show "a real desire to stay sober." (Tr. Vol. 2 at 39). He also noted that Sow had not relapsed at all during that time.

[14] At the conclusion of the sentencing hearing, the trial court sentenced Sow to an executed term of four (4) years for his Level 3 felony OVWI causing serious bodily injury and leaving the scene conviction and to two and one half (2½) years for each of his Level 6 felony OVWI causing serious bodily injury convictions. The trial court also ordered the sentences to be served concurrently. Thus, the trial court imposed an aggregate sentence of four (4) years, which was less than the term allowed by Sow's plea agreement.

[15] In support of this sentence, the court found as aggravating factors that: (1) the injuries sustained by the victims were greater than necessary to prove the offenses, including "a very severe injury to a thirteen-year-old girl;" (2) Sow had a pending pre-trial diversion agreement at the time of his offense; and (3) Sow had a recent criminal history at the time of the offense. As mitigating factors, the trial court found that Sow had: (1) "[led] primarily a law-abiding life;" (2) was likely to respond to probation and short-term imprisonment; and (3) was remorseful for his actions. (Tr. Vol. 2 at 62). The trial court also noted,

> the taxpayers in the State of Indiana are going to house Mr. Sow,
> [] pay for his food and clothing, shelter and all that, [] depending
> on how long [] I [choose] to sentence him for. And then as a
> result of that he's going to be deported back to Senegal and it, . . .
> there's a part of me that says . . . why should the taxpayers foot
> that bill if he's going to be leaving the United States[?]

(Tr. Vol. 2 at 61). Sow now appeals his sentence.

# Decision

On appeal, Sow argues that: (1) the trial court abused its discretion when it sentenced him because it failed to consider one of his proffered mitigating factors; and (2) his sentence was inappropriate in light of the nature of his offenses and his character. We will address each of these issues in turn.

## 1. Mitigating Factors

First, Sow argues that the trial court abused its discretion when it sentenced him because it failed to identify his inevitable deportation as a mitigating factor as he had requested. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id*. We will find an abuse of discretion where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id*. at 490–91.

[18]     Although a sentencing court must consider all evidence of mitigating factors offered by a defendant, the finding of mitigating factors rests within the court's discretion. *Henderson v. State,* 769 N.E.2d 172, 179 (Ind. 2002). A trial court is neither required to find the presence of mitigating factors, *Fugate v. State,* 608 N.E.2d 1370, 1374 (Ind. 1993), nor obligated to explain why it did not find a factor to be significantly mitigating. *Sherwood v. State,* 749 N.E.2d 36, 38 (Ind. 2001). A defendant who claims that the trial court failed to find a mitigating factor must establish that the mitigative evidence was both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493.

[19]     Here, the trial court acknowledged the potential that Sow would be deported but did not find that potential to be a mitigating circumstance. Sow argues that this decision was an abuse of discretion, but we have previously held that a trial court is not required to find a defendant's potential deportation to be a mitigating factor. *See Mendoza v. State*, 737 N.E.2d 784, 788 (Ind. Ct. App. 2000) (finding that the trial court did not abuse its discretion when it did not find that the defendant's potential deportation was a mitigating factor), *reh'g denied*. *See also Hunter v. State*, 72 N.E.3d 928, 935 (Ind. Ct. App. 2017) ("[T]he court is neither obligated to accept the defendant's arguments as to what constitutes a mitigating factor nor required to give the same weight to a proposed mitigating factor as does the defendant."), *trans. denied.* Because the trial court was not required to consider Sow's deportation a mitigating factor, we conclude that the trial court did not abuse its discretion.

**2. Inappropriate Sentence**

[20] Next, Sow argues that his aggregate four-year executed sentence was inappropriate in light of the nature of his offenses and his character. Under Indiana Appellate Rule 7(B), we may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "Appellate Rule 7(B) analysis is not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012) (internal quotation marks and citation omitted), *reh'g denied*.

[21] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Sow pled guilty to one Level 3 felony and two Level 6 felonies. A Level 3 felony carries a sentencing range of three (3) to sixteen (16) years, with an advisory sentence of nine (9) years. I.C. § 35-50-2-5. A Level 6 felony carries a sentencing range of six (6) months to two and one half (2½) years with an advisory sentence of one (1) year. I.C. § 35-50-2-7. Here, the trial court

sentenced Sow to an aggregate of four (4) years, which was five (5) years less than the advisory term for his three concurrent sentences.

[22] The nature of Sow's offense involved him driving intoxicated with a blood alcohol level of 0.148 and marijuana in his system. He crashed into Shoultz's car, causing serious injuries to her and her daughter's friend. Then, instead of checking to see whether Shoultz and the two children were okay, he attempted to escape from police.

[23] As for Sow's character, the State had recently charged Sow with committing two alcohol-related offenses (disorderly conduct and public intoxication), and Sow had a pending pre-trial diversion agreement relating to those two charges at the time of the instant offenses.

[24] In light of these factors, we conclude that the trial court's sentence was not inappropriate. Sow seems to suggest that his sentence should reflect evidence of his good character in the record, including his attempts to seek treatment and his decision to plead guilty. However, we find that the trial court's sentence took his assertion into account. Sow received five years less than the advisory sentence for his Level 3 felony conviction, meaning that his aggregate sentence was close to the minimum sentence he could receive. Such a sentence was not inappropriate in light of the nature of his offenses and his character.

[25] Affirmed.

Kirsch, J., and Bailey, J., concur.