## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 31 2015, 10:29 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Special Asst. to the State Public Defender
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jonathan R. Sichtermann
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jason L. Caldwell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 31, 2015

Court of Appeals Case No.
28A01-1501-CR-24

Appeal from the Greene Superior Court

The Honorable Dena A. Martin, Judge

Trial Court Cause No.
28D01-1407-MR-2

**Pyle, Judge.**

# Statement of the Case

Appellant/Defendant, Jason L. Caldwell ("Caldwell"), appeals his sentences for his convictions of murder[1] and Level 1 felony rape.[2] He claims that the trial court abused its discretion in sentencing him because it failed to consider his remorse as a mitigating factor, and he also asks us to revise his sentence under Indiana Appellate Rule 7(B). We affirm because we conclude that Caldwell's remorse was disputable and we find that Caldwell's sentence was appropriate in light of his character and the nature of his offense.

We affirm.

# Issues

1. Whether the trial court abused its discretion in sentencing Caldwell because it failed to consider a mitigating factor.

2. Whether Caldwell's sentence was inappropriate in light of the nature of his offense and his character.

# Facts

On November 20, 2014, Caldwell pled guilty, pursuant to a plea agreement, to murder, a felony, and one count of Level 1 felony rape. He also admitted to being an habitual felony offender. In exchange, the State dismissed the other charges against him, which included: Level 2 felony burglary, Level 1 felony

---

[1] IND. CODE § 35-42-1-1(1).

[2] I.C. § 35-42-4-1(a)(b).

rape, Level 3 felony criminal confinement, Level 6 felony auto theft, Level 6 felony theft, and two counts of Level 3 felony robbery. The State agreed that his enhancement for being an habitual offender should be capped at ten (10) years, but otherwise left sentencing to the trial court's discretion. During the guilty plea hearing, Caldwell only discussed the evidence supporting the elements of his offenses to the minimum extent necessary to establish a factual basis for his plea.

[4] On December 17, 2014, the trial court held a sentencing hearing. At the hearing, one of Caldwell's victims, Fitri Lamm ("Fitri"), recounted her history with Caldwell and her experiences the night of Caldwell's offenses. She said that she and her husband, David Lamm ("David"), had known Caldwell's brother, Kevin, prior to meeting Caldwell. They had then met Caldwell when they had roof problems and Kevin brought Caldwell with him to help fix the roof. After that point, the Lamms had become friends with Caldwell, and there were times that David allowed Caldwell to stay in an empty trailer on their property and gave him food in exchange for help with odd jobs.

[5] As for Caldwell's offenses, Fitri recounted that on the night of July 18, 2014, she had arrived home at around 11:00 or 11:30 p.m. When she entered the residence, Caldwell had been waiting for her, holding one of David's guns. He had forced her to kneel down and take her clothes off, and then he had tied her ankles and hands and raped her at least twice throughout the night. He had also told Fitri that David was "gone." (Sentencing Tr. 35).

[6]     According to Fitri, the next morning, Caldwell had taken her debit card, money, car keys, and car. Fitri said that she also thought she had heard him carrying other things out of the house, but she could not see from her vantage point. Before he left the house, Caldwell, had reinforced her ties with duct tape and rope around her ankles, hand, and mouth "really, really tight" so that it "really hurt." (Tr. 39).

[7]     Fitri said that after Caldwell left, she had moved around the room and had found scissors on the floor, which she used to cut the duct tape tying together her hands and ankles. Then, she had hopped to the middle of her driveway, but fell and could not get up, so she rolled herself down to the county road. Eventually, she said, her neighbor had found her and called the police and Fitri was taken to the hospital.

[8]     Detective Brian Smith ("Detective Smith") with the Indiana State Police Criminal Investigation Division also testified at the sentencing hearing. He said that during the course of the investigation of Fitri's rape, an officer had discovered David on the property, shot in the face and lying face down by an abandoned car.

[9]     According to Detective Smith, his investigation had revealed that Caldwell had taken a billfold, guns, debit cards, and some prescription drugs from the Lamm residence, as well as the Lamms' car. The police had located Caldwell two days later in Indianapolis, along with two females with whom he said Caldwell had been doing drugs during the previous two days. Detective Smith also

testified that the police had discovered that the females had traded the Lamms' guns for drugs with a local Indianapolis drug dealer. The police had retrieved the guns and connected them to David.

[10] Detective Smith further testified that when he picked up Caldwell, he had been cooperative and had admitted to shooting David and to dragging him over by the abandoned vehicle. Caldwell also admitted to waiting for Fitri, raping her, and tying her up. Detective Smith also said that Caldwell had been on parole for child molesting at the time of the offenses, and that he had removed the GPS bracelet related to his parole.

[11] During sentencing, Caldwell submitted two documents that the trial court added to his presentence investigation report ("PSI Report"). One document was a letter of apology, and one document was a report prepared by a mental health professional, which stated the professional's findings that Caldwell had grown up in an "extremely dysfunctional, violent family, where he was abused sexually, physically, verbally and emotionally for most of his development[,]" as well as the professional's conclusion that Caldwell was "severely, psychologically wounded." (Tr. 67).

[12] In addition to these documents, Caldwell's counsel requested that the trial court consider multiple mitigating factors, including: (1) his cooperation with law enforcement; (2) the fact that he was taking responsibility for his actions by entering into a guilty plea; and (3) his childhood and mental health.

At the conclusion of the sentencing hearing, the trial court sentenced Caldwell to sixty-three (63) years for his murder conviction, enhanced by ten (10) years for his status as an habitual offender, and thirty-eight (38) years for his rape conviction. The trial court also ordered the sentences served consecutively for a total of 111 years executed. It found that there were aggravating factors, including: (1) Caldwell's extensive criminal history; (2) his involvement in the justice system starting at age eight; (3) his numerous probation violations; (4) the position of trust he had held with the Lamms; and (5) the nature and circumstances of the offenses. The trial court also found that there were mitigating factors, including that: (1) Caldwell had cooperated with law enforcement; (2) Caldwell had entered a plea agreement and accepted responsibility; and (3) Caldwell's childhood had been "horrible." (Tr. 72). Caldwell now appeals.

# Decision

On appeal, Caldwell challenges his sentencing in two respects. First, he argues that the trial court abused its discretion when sentencing him because it overlooked a potential mitigating factor, his remorse. Second, he argues that his sentence is inappropriate in light of the nature of his offense and his character.

## 1. Mitigating Factor

Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 493 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d

218 (Ind. 2007). Under Indiana's advisory sentencing scheme, "once the trial court has entered a sentencing statement, which may or may not include the existence of aggravating and mitigating factors, it may then 'impose any sentence that is . . . authorized by statute; and . . . permissible under the Constitution of the State of Indiana.'" *Id.* at 491 (quoting I.C. § 35-38-1-7.1(d) (stating that a court may impose any sentence authorized by statute "regardless of the presence or absence of aggravating or mitigating circumstances")). As long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* at 490. We will find an abuse of discretion where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court may abuse its discretion in a variety of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91.

[16] Caldwell argues that the trial court abused its discretion in sentencing him because it overlooked his remorse as a mitigating factor. He claims that the apology letter he wrote to Fitri and submitted to the trial court at his sentencing hearing was evidence of this remorse that the trial court failed to consider.

[17] In order to show that a trial court failed to identify or find a mitigating factor, the defendant must establish that the mitigating evidence is both significant and clearly supported by the record. *Id.* at 493. While a failure to find mitigating circumstances clearly supported by the record may imply that the sentencing court improperly overlooked them, the court is obligated neither to credit mitigating circumstances in the same manner as would the defendant, nor to explain why it has chosen not to find mitigating circumstances. *Roush v. State*, 875 N.E.2d 801, 811 (Ind. Ct. App. 2007). Further, if the evidence supporting a proposed mitigating factor is "'highly disputable in nature, weight, or significance[,]'" the trial court does not abuse its discretion by failing to find it. *Henderson v. State*, 769 N.E.2d 172, 179 (Ind. 2002) (quoting *Smith v. State*, 670 N.E.2d 7, 8 (Ind. 1996)).

[18] Here, the evidence regarding Caldwell's remorse was disputable. The PSI Report included a finding by the probation officer who prepared the report that "[t]hroughout the interview, the defendant showed little remorse for his actions." (PSI 15).[3] Caldwell also admitted that he thought it was "okay to lie" and that there was a "very high" risk that he would reoffend. (PSI 15). In light of these factors, we conclude that Caldwell's remorse was disputable, and the

---

[3] Pursuant to Indiana Administrative Rule 9(G)(2)(b) and INDIANA CODE § 35-38-1-13, the PSI Report must be excluded from public access. However, in this case, the information contained in the PSI Report is "essential to the resolution" of Caldwell's claim. Admin. Rule 9(G)(7)(a)(ii)(c). Accordingly, we have included confidential information in this decision only to the extent necessary to resolve the appeal.

trial court therefore did not abuse its discretion in omitting Caldwell's remorse as a mitigating factor.

## 2. Inappropriate Sentence

Next, Caldwell asks us to revise his sentences under Appellate Rule 7(B). He argues that his sentences were inappropriate because they were the maximum sentences for murder and a Level 1 felony, and he argues that the maximum sentences should be reserved for the worst offenders, which he claims he is not. Specifically, Caldwell again notes that he accepted responsibility for his offenses, showed remorse, and had an extremely troubled childhood.

Pursuant to Appellate Rule 7(B), a reviewing court may revise a sentence if, "after due consideration of the trial court's decision," it finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Childress v. State*, 848 N.E.2d 1073, 1079-80 (Ind. 2006) (quoting App. R. 7(B)). Although this Court is not required to use "great restraint," we nevertheless give deference to a trial court's sentencing decision, both because the Appellate Rule 7(b) requires that we give "due consideration" to that decision and because we recognize the unique perspective a trial court has when making decisions. *Stewart v. State*, 866 N.E.2d 858, 865-66 (Ind. Ct. App. 2007). The "principal role of appellate review should be to attempt to leaven the outliers and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225

(Ind. 2008).  In addition, the defendant bears the burden of persuading this Court that his sentence is inappropriate.  *Childress*, 848 N.E.2d at 1080.

[21]  The sentencing range for murder is forty-five (45) to sixty-five (65) years, with an advisory sentence of fifty-five (55) years, I.C. § 35-50-2-3, and the sentencing range for Level 1 felony rape is twenty (20) to forty (40) years, with an advisory sentence of thirty (30) years.  I.C. § 35-50-2-4.  Because Caldwell was sentenced to sixty-three (63) years for his murder conviction and thirty-eight (38) years for his rape conviction, he received close to the maximum sentence on each conviction.

[22]  However, contrary to Caldwell's arguments, we conclude that he is one of the worst offenders.  The nature of his crimes were heinous.  He killed David, a man who had offered him opportunities for work, food, and a place to stay, and was in a position of trust with him.  Then, he waited for David's wife, Fitri, to come home, bound her hands and ankles, and raped her at least twice before leaving her tied up naked so that she had to hop and roll to the street to get help.

[23]  As for Caldwell's character, which is the primary basis for his argument, we find that the trial court convincingly summarized the evidence.  It said:

> You have a beyond extensive criminal history. . . . Your criminal record consists of very serious, violent offenses, including Child Molesting, Burglary, Battery Resulting in Serious Bodily Injury and Sexual Battery.  Those are just some.  The Court [is] also considering that your involvement in the juvenile justice system started at age eight, age eight [sic].  And you have received

multiple opportunities to receive rehabilitation through the juvenile justice system and then the criminal justice system.  And we [are] sitting here today, and I think we can all agree, with no success[.]  You have violated the terms of probation numerous times.  The Court puts somebody on probation to basically put them under the supervision of the Court for you to prove that you can follow the rules.  You do [not] follow the rules.  You [have] also, you had just been released from the Department of Correction on April the 21st of 2014, and then this occurred July the 18th and 19th.  You had just been released from the Department of Correction.  You were still on parole.  And we [had] learned that you removed the GPS monitoring devi[c]e.  Again, you do [not] follow the rules. . . . And looking at the document that was filed here today, you did have a horrible, horrible childhood.  But just so we understand one another, that does [not] give anybody the right to kill somebody and rape somebody.

(Tr. 70-72).  Based on these same factors, we conclude that Caldwell's sentence was not inappropriate in light of his character, and we will not revise it under Appellate Rule 7(B).

Affirmed.

Vaidik, C.J., and Robb, J., concur.