## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 17 2017, 8:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Kevin R. Hewlate
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Corey L. Spurlock,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

February 17, 2017

Court of Appeals Case No.
49A05-1609-PC-1976

Appeal from the Marion Superior Court

The Honorable Kurt Eisgruber, Judge

Trial Court Cause No.
49G01-0203-PC-84150

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, Corey L. Spurlock (Spurlock), appeals the post-conviction court's denial of his petition for post-conviction relief.

We affirm in part, reverse in part, and remand.

# ISSUES

Spurlock raises two issues on appeal, which we restate as follows:

(1) Whether the post-conviction court erred in denying Spurlock's petition for post-conviction relief because he received ineffective assistance of trial counsel; and

(2) Whether the post-conviction court erred in denying Spurlock's petition for post-conviction relief because he received ineffective assistance of appellate counsel.

# FACTS AND PROCEDURAL HISTORY

Spurlock is appealing from the denial of a petition for post-conviction relief. The facts underlying Spurlock's convictions were set forth in a memorandum decision issued on direct appeal as follows:

> On November 3, 1999, Indianapolis Police officers received a report of a dead body at 2427 North Oxford Street. There were no signs of forced entry at the address, but once there, officers found the dead bodies of Michael Haddix, Jr. [(Haddix)] and Crystal Davenport [(Davenport)]. Haddix had been shot three times including a fatal wound to the back of his head. Davenport had been fatally shot in the forehead.

Haddix's father testified that it was likely that Haddix kept a gun in his house for protection. However, no weapon was retrieved from Haddix's residence after his death. Further, Haddix's father had given Haddix some money, and Haddix recently had won some money, but no cash was found in Haddix's home after his death.

On November 12, 1999, Aurelia Mason heard gunshots coming from the residence of her next-door neighbors. When police officers arrived, there was no sign of forced entry at 2960 North Park Avenue, but officers found the dead bodies of Benjamin Boone [(Boone)] and Doris Johnson [(Johnson)]. Boone had been fatally shot in the back of the head and neck. Johnson had been fatally shot three times in the back of the head and neck.

Boone and Johnson both used crack cocaine in their house. There was also a gun inside the house. Ronald Freeman [(Freeman)], Boone's friend, was at Boone's house in the evening on November 11, 1999. Freeman smoked crack cocaine with Boone and Johnson, and then left shortly after two other men arrived at Boone's house. Freeman testified that as he walked away from the house he heard gunshots and saw the flash from a gun being fired. Police officers recovered several spent shell casings from the residence in addition to bullet fragments.

In March of 2002, during the course of another investigation, homicide detectives received information about a suspect in the four murders named "Lolo" and the location where "Lolo" lived. Detectives contacted [Spurlock's] grandmother who told them that [Spurlock's] nickname was "Lolo." Detective Roy West [(Detective West)] asked [Spurlock's] grandmother to have [Spurlock] contact him. That same day [Detective] West received a phone call from [Spurlock]. [Spurlock] agreed to meet with [Detective] West at the police headquarters the next day after [Spurlock] finished work.

On March 7, 2002, [Spurlock] arrived at police headquarters to

discuss the . . . homicides [of Haddix, Davenport, Boone, and Johnson]. [Spurlock] was shown some photographs to determine if he could identify any individuals included in the photo arrays. [Spurlock] confirmed that one of his nicknames was "Lolo." Detective[] West and [Detective Thomas] Tudor [(Detective Tudor)] advised [Spurlock] of his rights and questioned him further about the homicides. [Spurlock] made audio-taped statements to the detectives regarding the two incidents in November of 1999. [Spurlock] identified Terrence Swann [(Swann)] and Anthony "Banks" Johnson [(Banks)] as the primary perpetrators of the homicides that were committed as part of the robberies of those victims.[1] [Spurlock] returned home after giving those statements to the detectives.

The following day, [Spurlock] telephoned Detective West and informed him that he was no longer going to cooperate with the police, and that what he had told them the previous day was not true.

*Spurlock v. State*, No. 49A05-0305-CR-247, slip op. at 2-4 (Ind. Ct. App. May 6, 2014).

[5]     On March 24, 2002, the State filed an Information, charging Spurlock with Count I, murder, a felony, Ind. Code § 35-42-1-1; Count II, murder, a felony, I.C. § 35-42-1-1; Count III, conspiracy to commit robbery, a Class A felony, I.C. §§ 35-41-5-2, -42-5-1; Count IV, robbery, a Class A felony, I.C. § 35-42-5-1; Count V, murder, a felony, I.C. § 35-42-1-1; Count VI, murder, a felony, I.C. §

---

[1] In addition, Spurlock admitted to Detective West and Detective Tudor that he accompanied Swann and Banks to both residences with the intent that they were going to rob Haddix/Davenport and Boone/Johnson. Although Spurlock stated that on both occasions he was armed with a .38 caliber firearm, he explained to the officers that, in both instances, he immediately exited the house when Swann began shooting the victims.

35-42-1-1; Count VII, conspiracy to commit robbery, a Class A felony, I.C. §§ 35-41-5-2, -42-5-1; and Count VIII, robbery, a Class A felony, I.C. § 35-42-5-1. On July 12, 2002, Spurlock filed a motion to suppress the statements he made during his police interview regarding the events of November 12, 1999, and on August 1, 2002, Spurlock filed a motion to suppress the statements he made to police regarding the events of November 3, 1999. The trial court denied Spurlock's suppression motions on October 31, 2002.

[6]    On March 24-27, 2003, the trial court conducted a jury trial. At the close of the State's case-in-chief, Spurlock moved for judgment on the evidence pursuant to Indiana Trial Rule 50, which the trial court denied. Following the presentation of all evidence, the jury returned a guilty verdict on all eight Counts, and the trial court entered judgment of conviction in accordance with the verdict. On April 25, 2003, the trial court held a sentencing hearing. The trial court vacated Spurlock's convictions on Count IV, the Class A felony robbery of Davenport and Haddix, and Count VIII, the Class A felony robbery of Boone and Johnson, based on double jeopardy grounds. On Counts I and II—for the felony murders of Davenport and Haddix—the trial court sentenced Spurlock to forty-five years on each charge. As to Count III, Class A felony conspiracy to commit robbery of Davenport and Haddix, the trial court sentenced Spurlock to serve twenty years. For Counts V and VI, the felony murders of Boone and Johnson, the trial court imposed sentences of forty-five years on each. Finally, for Count VII, Class A felony conspiracy to commit robbery of Boone and Johnson, the trial court ordered Spurlock to serve thirty years. Counts I, II, III,

V, and VI were ordered to run concurrently, whereas Count VII was ordered to be served consecutively to Count I, resulting in an aggregate sentence of seventy-five years, fully executed in the Indiana Department of Correction.

[7] On May 19, 2003, Spurlock filed a Notice of Appeal. On May 6, 2004, this court issued a memorandum decision, affirming Spurlock's convictions. *See Spurlock*, No. 49A05-0305-CR-247, slip op. at 15. We held that, contrary to Spurlock's assertions, the State satisfied the *corpus delicti* requirement to allow for the admission of Spurlock's confessions, and we further concluded that Spurlock's statements during his police interview were made voluntarily. *See id.* slip op. at 9, 15.

[8] On March 21, 2005, Spurlock filed a *pro se* verified petition for post-conviction relief, claiming that he received ineffective assistance of both trial and appellate counsel. On September 8, 2008, the trial court dismissed Spurlock's petition due to his failure to prosecute. Six years later, on October 31, 2014, Spurlock again filed a verified petition for post-conviction relief, which was amended on September 2, 2015. In his amended petition, Spurlock once more claimed that he was denied the effective assistance of both trial and appellate counsel in violation of the United States and Indiana Constitutions. Specifically, Spurlock alleged that his "trial counsel was ineffective for failing to object to statements made by the prosecutor during closing arguments" and that his "appellate counsel was ineffective for failing to raise a claim that [Spurlock's] convictions for conspiracy to commit robbery, as Class A felonies, are in violation of double jeopardy." (Appellant's App. Vol. III, pp. 165-66). On November 17, 2015, the

post-conviction court conducted a hearing on Spurlock's petition. On August 8, 2016, the post-conviction court issued its Findings of Fact and Conclusions of Law Denying Post-Conviction Relief.

Spurlock now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

A post-conviction proceeding provides a petitioner with the "opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal." *Maymon v. State*, 870 N.E.2d 523, 526 (Ind. Ct. App. 2007) (citing *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied*, 534 U.S. 1164 (2002)). A post-conviction proceeding, however, is not "a super appeal," and it "provide[s] only a narrow remedy for subsequent collateral challenges to convictions." *Id.* (citing *Ben-Yisrayl*, 738 N.E.2d at 258). Because post-conviction proceedings are civil in nature, the petitioner bears the burden of establishing his grounds for relief by a preponderance of the evidence. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002), *cert. denied*, 540 U.S. 830 (2003); *see* Ind. Post-Conviction Rule 1(5).

As stated by our supreme court, "[a] petitioner who has been denied post-conviction relief faces a rigorous standard of review." *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). Our court will affirm the post-conviction court's denial of relief unless "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court."

*Id.* at 170. In other words, "[t]his [c]ourt will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Id.* (first alteration in original). On review, we consider only the evidence and reasonable inferences supporting the post-conviction court's decision. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). Moreover, the post-conviction court "is the sole judge of the evidence and the credibility of the witnesses." *Id.* at 468-69. We will review the post-conviction court's factual findings for clear error, but we owe no deference to its conclusions of law. *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013).

## II. *Ineffective Assistance of Trial Counsel*

[12] Spurlock claims that his trial counsel rendered ineffective assistance. The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the right to effective assistance of counsel." *Latta v. State*, 743 N.E.2d 1121, 1125 (Ind. 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984), *reh'g denied*). When considering whether a petitioner has received ineffective assistance of counsel, "a 'strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable and professional judgment.'" *McCullough v. State*, 973 N.E.2d 62, 74 (Ind. Ct. App. 2012) (quoting *Morgan v. State*, 755 N.E.2d 1070, 1073 (Ind. 2001)), *trans. denied*. Because counsel's performance is presumed effective, "a defendant must offer strong and convincing evidence to overcome this presumption." *Id.* (quoting *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002)).

[13] It is well established that "[i]solated poor strategy, inexperience, or bad tactics do not necessarily constitute ineffective assistance." *Id.* (citing *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996)). In order to succeed on a claim of ineffective assistance of counsel, the "petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance." *Id.* (citing *Strickland*, 466 U.S. at 687). Deficient performance is that which "falls below an objective standard of reasonableness based on prevailing professional norms." *Id.* (citing *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002)). Prejudice is established if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 74-75 (citing *French*, 778 N.E.2d at 824). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* at 75 (quoting *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001)). Failure to establish either deficient performance or prejudice will cause the petitioner's claim to fail. *Henley v. State*, 881 N.E.2d 639, 645 (Ind. 2008). "If we can easily dismiss an ineffective assistance claim based upon the prejudice prong, we may do so without addressing whether counsel's performance was deficient." *Id.*

[14] In this case, Spurlock contends that his trial counsel's performance was deficient based upon a failure to object to a statement made during the State's closing argument. During the trial, evidence was presented that Banks, one of Spurlock's co-conspirators, was killed in the month following the murders of Davenport, Haddix, Boone, and Johnson. During the course of his

investigation into Banks' death, Officer Andrew Stark (Officer Stark) of the Indianapolis Metropolitan Police Department received a call from Swann—*i.e.*, the third co-conspirator—concerning Banks' murder. Based on information he received from Swann, Officer Stark advised Detective West and Detective Tudor that they should locate and talk to "[a] subject by the name of Lolo" regarding the four murders from November of 1999. (Tr. Vol. II, p. 270). At the time, there was no indication as to the real identify of "Lolo." (Tr. Vol. II, p. 270). As Detective West's investigation progressed, on February 27, 2002, he had the opportunity to escort Swann around Indianapolis in his police vehicle for the purpose of locating the firearm that had been used in the Boone/Johnson murders. When they drove by the house located at 3510 North Adams Street, Swann pointed at the residence and informed Detective West that it was Lolo's house. On March 6, 2002, Detective West returned to the house at 3510 North Adams. Hanna Poindexter answered the door and indicated that her grandson, Lolo, lived there with her. From there, it was determined that "Lolo" was an alias used by Spurlock. (Tr. Vol. II, p. 311).

[15] At trial, when Detective West was testifying as to his discovery of Spurlock based on Swann pointing out Lolo's house, defense counsel objected on hearsay grounds as to "how that address was made aware to [Detective West]." (Tr. Vol. II, p. 308). The State clarified that it was not offering the testimony for the truth of the matter asserted, but rather to show why Detective West made the decision to return to that house in furtherance of his investigation. The trial

court ruled that Detective West could testify that Swann pointed to the house but could not inform the jury that Swann had identified the house as Lolo's.

[16]     During the defense's closing argument, Spurlock's attorney heavily emphasized the fact that the State's case relied entirely on Spurlock's confession, which Spurlock maintained was coerced. In rebuttal, the State argued:

> I want to start out with [Spurlock's] assertion that these two confessions are the only evidence that we have of his guilt—well, what did he leave out when he said that, how did we get to this point, how did we pluck him out of the air and get him to confess to these crimes? What he failed to mention to you, that this is not the only evidence that we have—how did we get to him? Remember, . . . Swann pointing to Lolo's grandmother's house— that's some pretty strong evidence, and sure enough, Detective West goes back to that house and there's a grandmother there, [Spurlock's] grandmother, and there's a Lolo there sitting right here in front of you today, that's some pretty strong evidence, ladies and gentlemen, something you never heard them refer to for obvious reasons.

(Tr. Vol. III, p. 709).

[17]     "In order to prove ineffective assistance of counsel due to the failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by the failure." *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001), *cert. denied*, 535 U.S. 1019 (2002). According to Spurlock, his trial counsel should have objected to the State's "reference to facts not in evidence" because "there was no evidence that Swann identified the house as Lolo's grandmother's." (Appellant's Br. p. 27; Appellant's Reply Br. p. 7). Moreover,

Spurlock insists that the State was prohibited from relying on the fact that Swann pointed to a house as substantive evidence because it was admitted only for the purpose of showing Detective West's course of investigation. Spurlock insists that his trial counsel's failure to object during the State's closing argument was prejudicial because there is evidence that the jury "struggl[ed] with what weight to give Spurlock's confession." (Appellant's Br. p. 30). Thus, Spurlock argues that

> [i]t is reasonable that the jury could have used the State's argument that [Swann] identified Spurlock's grandmother's house, a fact not in evidence, to bolster Spurlock's confession. If the jury believed that a co-defendant, who they knew had already been convicted of crimes in one of the incidents, identified Spurlock as being involved, this would bolster the confession.

(Appellant's Br. p. 31).

[18]   In its Findings of Fact and Conclusions of Law Denying Post-Conviction Relief, the post-conviction court concluded that even if Spurlock's trial counsel had objected, such objection would not have been sustained because the State's comment was nothing more than its own analysis of the evidence. We agree. A review of the record reveals that the jury heard evidence that Officer Starks informed Detective West and Detective Tudor that they should locate and interview an individual with the street name of Lolo with respect to their homicide investigations. Thereafter, Detective West was driving around with Swann in search of the firearm used in the commission of the instant offenses. During that time, Swann pointed at a house located at 3510 North Adams

Street, which prompted Detective West to further investigate. When Detective West returned to that address, he discovered that an individual named Lolo lived there. Detective West left a message with Lolo's grandmother, and it was Spurlock who responded. Spurlock subsequently informed Detective West that he is also known as Lolo.

[19] Our supreme court has recognized that there is a risk with the course-of-investigation exception to hearsay that "the jury will rely upon the out-of-court assertion as substantive evidence of guilt—rather than for the limited purpose of explaining police investigation." *Blount v. State*, 22 N.E.3d 559, 566 (Ind. 2014).[2] Here, however, the risk of prejudice is minimal because Detective West was already aware of possible involvement by an individual named Lolo; as such, Spurlock was not implicated based upon Swann's act of pointing alone. In addition, Swann did not directly accuse Spurlock of committing the offenses. *See id.* Rather, it was Spurlock himself who confirmed his own identity as Lolo and confessed to participating in the robbery and murders of Davenport, Haddix, Boone, and Johnson.

[20] Accordingly, we find that it was entirely reasonable for the jury to reach the same inference that the State argued during its closing argument without inappropriately considering the evidence for any purpose other than for which it was admitted. Moreover, not only did the State—immediately prior to making

---

[2] Hearsay can include a non-verbal assertion, such as where a witness identifies a perpetrator by pointing. Ind. Evidence Rule 801(a)(2); *Sandefur v. State*, 945 N.E.2d 785, 788 (Ind. Ct. App. 2011).

the remark now at issue—emphasize that "statements by attorneys are not evidence," but the trial court specifically instructed the jury that any statements made by the attorneys during closing arguments are not evidence. (Tr. Vol. III, p. 708). Our court presumes that a jury follows the instructions that it is given. *See R.T. v. State*, 848 N.E.2d 326, 332 (Ind. Ct. App. 2006), *trans. denied*. Therefore, not only did Spurlock fail to prove that his objection, if made, would have been sustained, but he also failed to carry his burden of establishing that the results of the proceeding would have been any different.

### III. *Ineffective Assistance of Appellate Counsel*

Next, Spurlock claims that his appellate counsel rendered ineffective assistance. When considering whether a petitioner received ineffective assistance of appellate counsel, we rely on the same standard of review as used in an analysis of ineffective assistance of trial counsel. *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). Thus, Spurlock must demonstrate that his appellate counsel was deficient and that such deficiency resulted in prejudice. *Id.*

In general, claims of ineffective assistance of appellate counsel "fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well." *Id.* Here, Spurlock argues the second type—that his appellate counsel was ineffective by failing to raise an issue on appeal, which resulted in waiver of the matter for collateral review. We reiterate that Spurlock "must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential." *Id.* (citing *Ben-Yisrayl*, 738 N.E.2d at 261). In considering whether appellate counsel's performance was deficient for

failing to raise an issue, "we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are 'clearly stronger' than the raised issues." *Id.* (quoting *Timberlake v. State*, 753 N.E.2d 591, 605-06 (Ind. 2001)). "If the analysis under this test demonstrates deficient performance, then we examine whether[] 'the issues which . . . appellate counsel failed to raise[] would have been clearly more likely to result in reversal or an order for a new trial.'" *Id.* (second alteration in original) (quoting *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997)). We must further

> consider the totality of an attorney's performance to determine whether the client received constitutionally adequate assistance . . . [and] should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made.

*Id.* at 1195-96 (alterations in original) (quoting *Bieghler*, 690 N.E.2d at 194).

[23] Spurlock argues that his appellate counsel was deficient by failing to argue that his convictions for conspiracy to commit robbery resulting in serious bodily injury, Class A felonies, violate double jeopardy "because it was clear that the same injuries were used to enhance the conspiracy convictions to Class A felonies and establish the felony murder convictions." (Appellant's Br. p. 18). In arguing that the issue was obvious from the face of the record, Spurlock directs our attention to *Henderson v. State*, 769 N.E.2d 172 (Ind. 2002), which

was decided prior to Spurlock's direct appeal. In *Henderson*, similar to the instant case, the defendant challenged his convictions for felony-murder and Class A felony conspiracy to commit robbery on double jeopardy grounds. *Id.* at 177. Our supreme court found no violation of the double jeopardy clause because it was

> not reasonably possible that the jury used the same evidentiary facts to establish all the elements of both [C]lass A felony conspiracy to commit robbery and felony murder (the defendant killed [the victim] while committing the robbery of [another individual]). In other words, the offenses of felony-murder and [C]lass A felony conspiracy were each established by the proof of a fact not used to establish the other offense.

*Id.* at 178.

[24]     Nonetheless, our supreme court elected to review the defendant's claims under certain "rules of common law and statutory construction." *Id.* These "rules of statutory construction and common law . . . are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson* [*v. State*, 717 N.E.2d 32 (Ind. 1999)]." *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002). Included among these rules is "the doctrine that where one conviction is based on the same bodily injury that forms the basis for elevating another conviction to a higher penalty classification, the two cannot stand." *Henderson*, 769 N.E.2d at 178. Because the victim's death "was the basis for [the defendant's] convictions of both murder and Class A felony conspiracy," the *Henderson* court held that the conspiracy conviction should be reduced to a

Class B felony conspiracy to commit robbery, which requires only commission while armed with a deadly weapon rather than a result of serious bodily injury. *Id.* at 178-79; *see* I.C. § 35-42-5-1. Spurlock now claims that had this issue been raised on direct appeal, he would have succeeded in having his two convictions for Class A felony conspiracy to commit robbery (Counts III and VII) reduced to Class B felonies.

[25] The State, on the other hand, argues that the double jeopardy claim is not obvious on the face of the record because our court, on direct appeal, did not raise the issue *sua sponte*. *See Whitham v. State*, 49 N.E.3d 162, 168 (Ind. Ct. App. 2015) (noting that "questions of double jeopardy implicate fundamental rights and, as such, may be raised for the first time on appeal, or even by this court *sua sponte*"), *trans. denied.* Nevertheless, the State maintains that even if appellate counsel was deficient in failing to raise the common law/statutory construction issue, Spurlock has failed to establish prejudice as to Count III (conspiracy to commit robbery of Davenport and Haddix) because the trial court ordered the sentence to run concurrently with the sentence imposed for Count I (murder of Davenport). As to Count VII (conspiracy to commit robbery of Boone and Johnson), which sentence was ordered to be served consecutively to the rest, the State concedes that "there would be prejudice to [Spurlock]." (State's Br. p. 22).[3]

---

[3] Yet, the State attempts to argue that Count VII was not improperly enhanced to a Class A felony because Count VII relies on conspiracy to commit robbery that resulted in bodily injury to Boone and Johnson,

[26] We agree with Spurlock that, at the time of his direct appeal, it was sufficiently established that if "one conviction is based on the same bodily injury that forms the basis for elevating another conviction to a higher penalty classification, the two cannot stand." *Henderson*, 769 N.E.2d at 178; *see also Pierce*, 761 N.E.2d at 830 (reducing a robbery conviction from a Class B felony to a Class C felony because it was based on the same bodily injury that formed the basis for a Class A felony burglary conviction).[4] Here, the State charged in Count III, as a Class A felony, that Spurlock committed conspiracy to commit robbery which resulted in serious bodily injury to Davenport and Haddix. The State relied on the same bodily injuries to charge Spurlock with the murders of Davenport and Haddix (Counts I and II). Similarly, the same bodily injuries were relied upon in Count VII to charge Spurlock with Class A felony conspiracy to commit robbery of Boone and Johnson as in Counts V and VI for the murders of Boone and Johnson. Accordingly, because the issue is obvious from the face of the record and stronger than the issues actually raised, we find that Spurlock has

---

whereas Count I charged the murder of Davenport. Thus, the State contends that these charges "involve entirely different victims" and "do not fall within the 'double jeopardy' rule argued by [Spurlock]." (State's Br. p. 22). It appears that the State's argument is based on the fact that the trial court ordered the sentence on Count VII to run consecutively to the sentence on Count I. It is clear, however, that Counts V and VI, the murders of Boone and Johnson, rely on the same bodily injury as used to enhance the conspiracy charge in Count VII to a Class A felony. By ordering Count VII to run consecutively to Count I, the trial court necessarily ordered Count VII to also run consecutively to Counts V and VI (as Counts I, II, III, V, and VI were all ordered to run concurrently). Therefore, we find no merit in the State's argument.

[4] The post-conviction court conversely concluded that, at the time of Spurlock's direct appeal, the law in this area was unsettled. In particular, the post-conviction court cited *Spivey v. State*, 761 N.E.2d 831 (Ind. 2002). In *Spivey*, the supreme court determined that the defendant's "convictions for felony-murder and conspiracy to commit burglary [did] not qualify for relief" under the rules of statutory construction and common law already discussed. *Id.* at 834. However, *Spivey*, unlike *Henderson* and *Pierce*, did not involve an enhancement on the conspiracy charge based on the same bodily injury that formed the basis for the felony-murder charge.

demonstrated that his appellate counsel was deficient in failing to raise this issue on appeal. Furthermore, had this issue been raised, Spurlock likely would have prevailed, resulting in a reduction of his conspiracy charges to Class B felonies (as Spurlock was found to be armed with a deadly weapon in his conspiracies to commit robbery). Notwithstanding whether the trial court imposed a concurrent sentence as to Count III, we agree with Spurlock that a higher-level felony is prejudicial because he "has an interest in his criminal history accurately reflecting his convictions." (Appellant's Reply Br. p. 6). In addition, because Spurlock's sentence on Count VII was ordered to run consecutively, entry as a Class B felony will result in a lower aggregate sentence. Therefore, we conclude that Spurlock has demonstrated that he received ineffective assistance of appellate counsel.

## CONCLUSION

Based on the foregoing, we conclude that the post-conviction court erred in denying Spurlock's petition for post-conviction relief because, although Spurlock received effective assistance of trial counsel, he received ineffective assistance of appellate counsel. Accordingly, we remand for the entry of judgment of conviction on Counts III and VII to be reduced to Class B felonies and for the trial court to re-sentence accordingly.[5]

---

[5] Because the trial court initially imposed the then-statutory minimum sentence of twenty years on Count III and the then-advisory term of thirty years on Count VII for Class A felonies, Spurlock asks that we now order the minimum and advisory sentences, respectively, for Class B felonies. As sentencing is a matter of trial court discretion, we decline Spurlock's request. *See Buchanan v. State*, 767 N.E.2d 967, 970 (Ind. 2002).

Affirmed in part, reversed in part, and remanded.

Crone, J. and Altice, J. concur